IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COUMBIA

COUNTY BOARD OF ARLINGTON    )
VIRGINIA                     )
                             )
        Plaintiff,           )
v.                           )        Civil Action No. 1:09cv01570
                             )
UNITED STATES DEPARTMENT OF  )
TRANSPORTATION, et al.,      )
                             )
        Defendants.          )
                             )
                             )

## ANSWER OF STATE DEFENDANTS

The State Defendants, Pierce R. Homer, former Virginia Secretary of Transportation, as he has been named as a defendant in both his official capacity and in his individual capacity, and the Virginia Department of Transportation, (hereinafter referred to as "Defendants"), by counsel answer the numbered paragraphs of the Plaintiff's complaint as follows:

1. Paragraph 1 characterizes Plaintiff's cause of action, and does not require a response. To the extent a response is deemed required, the allegations in Paragraph 1 are denied.

2. Paragraph 2 characterizes Plaintiff's cause of action, and does not require a response. To the extent a response is deemed required, the allegations in Paragraph 2 are denied.

3. Defendants admit that in October 2006, VDOT executed an Interim Agreement with Fluor Virginia, Inc. and Transurban (USA) Development, Inc. to further develop financial and technical elements of the Project. The allegations contained in Paragraph 3 are denied. As to the portions of Paragraph 3 that summarize Plaintiff's prayer for relief, Defendants state that Plaintiff presents no claim upon which such relief can be granted.

4. The allegations contained in Paragraph 4 are denied.

5. The allegations contained in Paragraph 5 are denied.

6. The allegations contained in Paragraph 6 are denied.

7. The Defendants lack information sufficient to admit or deny the allegations set forth in Paragraph 7. To the extent Defendants must respond, they deny the allegations.

8. The Defendants lack information sufficient to admit or deny the allegations set forth in Paragraph 8. To the extent Defendants must respond, they deny the allegations.

9. The allegations of Paragraph 9 are denied.

10. The allegations of Paragraph 10 are denied.

11. Paragraph 11 is a characterization of "the defendants' January 9, 2009 determination" which speaks for itself. Plaintiffs incorrectly refer to Defendants' January 9, 2009 determination when it was actually issued by FHWA on January 7, 2009. To the extent a response is required, the allegations are denied.

12. The allegations of Paragraph 12 are denied.

13. Paragraph 13 of the Complaint consists, in part, of legal conclusions to which no response is required. But, to the extent a response is required, all other allegations contained in Paragraph 13 are denied.

14. Paragraph 14 of the Complaint consists, in part, of legal conclusions to which no response is required. But, to the extent a response is required, all other allegations contained in Paragraph 14 are denied.

15. Paragraph 15 consists, in part, of legal conclusions and prayers for relief to which no response is required. To the extent allegations are contained in Paragraph 15, they are denied.

16. Paragraph 16 consists, in part, of legal conclusions to which no response is required. All other allegations are denied.

17.     Paragraph 17 consists of legal conclusions to which no response is required.

18.     The Defendants lack information sufficient to admit or deny the description of Plaintiff County Board of Arlington, Virginia and its activities set forth in Paragraph 18, but to the extent that a response is required, the allegations are denied.  The Defendants admit that the proposed Northern Section of the I-95/395 HOT Lanes Project will traverse Arlington County in the existing footprint of the I-95/395 corridor.

19.     The Defendants lack information sufficient to admit or deny the information set forth in Paragraph 19.  To the extent Defendants must respond, they deny the allegations.

20.     The Defendants admit the allegations in Paragraph 20 of the Complaint.

21.     The Defendants admit the allegations in Paragraph 21 of the Complaint

22.     The Defendants admit the allegations in Paragraph 22 of the Complaint.

23.     The allegation in Paragraph 23 is admitted.

24.     The allegation in paragraph 24 that Secretary Pierce R. Homer is the head of VDOT is denied because it is incorrect.  Secretary Homer was not the head of VDOT.  He was the Secretary of Transportation for the Commonwealth of Virginia, but, as of January 16, 2010, he no longer serves in that capacity.

25.     Paragraph 25 through 41 of the Complaint set forth a "Summary of Law." Defendants state that the statutory provisions, regulations and FHWA Orders referenced therein speak for themselves, and require no response.  To the extent the "Summary of Law" by the Plaintiff conflicts with the actual content of those provisions, the Defendants deny such characterizations as being incorrect, and state that this Court can take judicial notice of the actual content of those provisions.  Turning to the paragraphs themselves, as to Paragraph 25, Defendants state that it consists of legal conclusions to which no response is required, but which

does require a clarification.  VDOT is not a federal agency and therefore Plaintiff's allegation that the National Environmental Policy Act (NEPA) requires VDOT to take certain actions is incorrect.

26.   Paragraph 26 consists of legal conclusions to which no response is required but which does require the clarification that VDOT is a state agency, not a federal agency and therefore NEPA does not apply to it.

27.   Paragraph 27 consists of legal conclusions to which no response is required but which does require the clarification that a project cannot proceed until a Record of Decision has been issued if there has been a Final Environmental Impact Statement performed and there is no such document as a "final" Environmental Assessment in the federal regulations.

28.   Paragraph 28 consists of legal conclusions to which no response is required.

29.   The last sentence of Paragraph 29 is admitted to the extent that VDOT is preparing an EA for the Southern Section of the I-95/395 HOT Lanes Project.  The remainder of Paragraph 29 consists of Plaintiff's characterizations of federal regulations or legal conclusions to which no response is required.

30.   Paragraph 30 consists of Plaintiff's characterization of a federal regulation and does not require a response.

31.   Paragraph 31 consists, in part, of legal conclusions, to which no response is required. To the extent Paragraph 31 contains any allegations, they are denied.

32.   The first sentence of Paragraph 32 consists of Plaintiff's characterization of 40 C.F.R. § 1508.27(b)(7).  The remainder of paragraph 32, which refers to determining the scope of Environmental Impact Statements, 40 C.F.R. § 1508.25(a)(1)-(2), consists of legal conclusions to which no response is required.

33.     Paragraph 33 consists of legal conclusions to which no response is required.

34.     Paragraph 34 consists of legal conclusions to which no response is required.

35.     Paragraph 35 consists of Plaintiff's characterization of federal regulations which requires a clarification.  Plaintiffs state in subparagraph (ii) that there is a second type of action "that may be deemed eligible for a Categorical Exclusion after further administrative review and approval".  What Plaintiffs fail to mention is that under 23 C.F.R. § 771.117(d), that approval can only be given after "the applicant shall submit documentation which demonstrates that the specific conditions or criteria for these CEs are satisfied and that significant environmental effects will not result."

36.     Paragraph 36 consists of legal conclusions to which no response is required but which does need clarification.  **All** Categorical Exclusions must satisfy the overarching criteria set forth in 40 C.F.R. § 1508.4 and 23 C.F.R. § 771.117(a) instead of the "second type of Categorical Exclusion … only intended for certain types of actions…" Pls. Complaint at 14. Emphasis added.  The third sentence in Paragraph 36 is admitted.

37.     Paragraph 37 consists of legal conclusions to which no response is required.

38.     Paragraph 38 consists of legal conclusions to which no response is required.

39.     Paragraph 39 consists of legal conclusions to which no response is required.

40.     Paragraph 40 consists of legal conclusions to which no response is required.  To the extent Paragraph 40 contains any allegations, they are denied.

41.     Paragraph 41 consists of legal conclusions to which no response is required.  To the extent Paragraph 41 contains any allegations, they are denied.

42.     Paragraph 42 consists mostly of Plaintiff's characterization of the history and purpose of the HOV lanes.  The second sentence of Paragraph 42 is admitted.  The third sentence

of Paragraph 42 is admitted with the clarification that Plaintiffs failed to mention that HOV lanes are also used by motorcycles, vehicles of public utility companies operating in response to an emergency call, clean fuel vehicles regardless of the number of occupants in them, taxicabs having two or more occupants, including the driver, law enforcement vehicles, and emergency vehicles such as fire-fighting vehicles, ambulances, and rescue squad vehicles. The Plaintiff's stated purpose of the HOV lanes is inconsistent with the purpose of the HOV lanes contained in Virginia Code § 33.1-46.2(A) and therefore is denied.

43.    The first sentence of Paragraph 43 is admitted with the clarification that the City of Alexandria, the Town of Dumfries, and the Counties of Fairfax and Prince William also "straddle" the Project.  Paragraph 43 describes in part, the Plaintiff's characterization of its activities and historical practice.  The Defendants lack sufficient knowledge upon which to base a response to such allegations of practices for "decades", and therefore, must deny them.

44.    In Paragraph 44, Plaintiff states, "According to the Task Force, the *I-95/I-395 HOV facility* is the single most important element of the regional transportation network."  Pls. Complaint at 16.  In reality, the High Occupancy Vehicle Enforcement Task Force's 2005 report Plaintiff referenced stated, "The *high-occupancy vehicle (HOV) system in Northern Virginia* is one of the most successful in the country, and is the single most important element in the regional transportation network."  *See Page 1 of the Second HOV Task Force Report, January 4, 2005.*  Emphasis added.

45.    Paragraph 45 consists of Plaintiff's characterizations of the I-95/I-395 HOV facility.  To the extent Paragraph 45 contains any allegations, they are denied.

46.    Paragraph 46 consists of Plaintiff's characterizations of "slugging".  To the extent Paragraph 46 contains any allegations, they are denied.

47.    Paragraph 47 consists of Plaintiff's characterizations of the "Project".  Defendant must clarify that the Plaintiff failed to state that the Town of Dumfries is included in the Project Corridor and also incorrectly alleges that the toll collection period is for a term of eighty years. No such term has yet been set.  Plaintiff also fails to mention that the Defendants will benefit from the Project through toll revenues being used to maintain and operate the facility and any excess revenue, beyond debt service and a reasonable rate of return for the Concessionaire, will be shared between the Commonwealth of Virginia and the Concessionaire.  The Commonwealth may use these funds for improvements in the corridor such as transit.  To the extent Paragraph 47 contains any allegations, they are denied.

48.    Paragraph 48 consists of Plaintiff's characterizations of the "Interim Agreement to Develop And/Or Operate the I-95/I-395 HOT Lanes Project In Virginia" (the "Interim Agreement") which speaks for itself and provides the best evidence of its contents.  In addition, it was executed by the parties on October 24, 2006, not on October 4, 2006 as alleged by Plaintiffs.  To the extent Paragraph 48 contains any allegations contrary to the contents of the Interim Agreement, they are denied.

49.    Paragraph 49 consists of Plaintiff's characterization of the Virginia Department of Transportation's May 24, 2006, requested National Environmental Policy Act (NEPA) documentation of concurrence from FHWA to pursue a Categorical Exclusion (CE) for the Northern Section (described as I-95/I-395 BRT/HOT Lane Improvements from South Eads Street to 0.64 miles south of Route 234) (the Project) and an Environmental Assessment (EA) for the Southern Section (described as the I-95/I-395 HOV Lane Extension Project with BRT/HOT Option) and the included briefing paper entitled, "Assessment of Logical Termini and Independent Extension Project" which speak for themselves and provide the best evidence.

Plaintiffs have incorrectly confused VDOT's normal process of developing an Interchange Justification Report (IJR) for the Northern Section in accordance with FHWA requirements for assessing the proposed Project's potential impacts on the roadway system with a requirement under NEPA, which it is not. The allegations contained in Paragraph 49 are denied.

50.     Paragraph 50 consists of Plaintiff's characterizations of FHWA's August 31, 2006, approval of the Northern Section of the Project to be processed as a Categorical Exclusion, which speaks for itself and provides the best evidence. To the extent Paragraph 50 contains allegations, they are denied.

51.     Paragraph 51 consists of Plaintiff's characterizations of FHWA's January 7, 2009 approval of the Categorical Exclusion ("FHWA's January 7, 2009 Approval") for the Northern Section of the Project, which speaks for itself and provides the best evidence. To the extent Paragraph 51 contains allegations, they are denied.

52.     Paragraph 52 is admitted with the clarification that a subsequent memo to the file dated January 9, 2009, added to the list of documents reviewed, the following: the Phase I Archeological Survey and addendums, May 2007, September 2007, December 2007, April 2008, July 2008; and Reconnaissance Architectural Survey, July 2007.

53.     Paragraph 53 consists of Plaintiff's characterization of FHWA's January 7, 2009 Approval which speaks for itself and provides the best evidence. To the extent Paragraph 53 contains allegations, they are denied.

54.     Paragraph 54 consists of Plaintiff's characterization of FHWA's January 7, 2009 Approval which speaks for itself and provides the best evidence. To the extent Paragraph 54 contains allegations, they are denied.

55.     Paragraph 55 consists of Plaintiff's characterization of FHWA's January 7, 2009 Approval which speaks for itself and provides the best evidence.   To the extent Paragraph 55 contains allegations, they are denied.

56.     Paragraph 56 consists of Plaintiff's characterization of FHWA's January 7, 2009 Approval which speaks for itself and provides the best evidence.   The allegations contained in Paragraph 56 are denied.

57.     Paragraph 57 consists of Plaintiff's characterization of the Project based on the Interim Agreement, the May 2009 Project Summary and the July 16, 2009 presentation to the Commonwealth Transportation Board, which speak for themselves and provide the best evidence.   The fourth sentence in Paragraph 57 is admitted.   The allegations contained in Paragraph 57 are denied.

58.     Paragraph 58 consists of Plaintiff's characterization of FHWA's June 20, 2007 reassessment of its decision to pursue a Categorical Exclusion for the Northern Section of the Project which speaks for itself and provides the best evidence.  The Plaintiffs incorrectly state and the Defendants deny that the following elements are part of the Project: construction of six parking lots accommodating 3,000 vehicles; construction of 12 bus station expansions; construction of more than 14 new or expanded access points; addition of new sound walls along the entire length of the I-95/395 corridor within the Project limits; modification of the Bus Rapid Transit operations and facilities; and construction of phase VIII of the Springfield Interchange connections that are being implemented under the Capital Beltway HOT Lanes project. Defendants admit that an 8-mile extension was incorporated into the project at the southern terminus of the northern project at the outset of the development of the CE to allow for a smooth transition between merging traffic from the HOT lanes and through traffic on I-95.  The

extension addressed a condition of the CE in order that the northern project not point the proverbial "loaded gun" at the roadway network at either termini forcing additional improvements be made beyond the scope of the project.

59.    The allegations contained in Paragraph 59 are denied.  No new permanent right of way is needed for the Project.  Only five minor, temporary construction easements totaling less than 1.3 acres are anticipated to be needed for construction of the Project.

60.    The first sentence of Paragraph 60 is Plaintiff's characterization of traffic and revenue studies performed by Vollmer and Associates, LLP, which speak for themselves and provide the best evidence.  These traffic and revenue studies are not environmental studies and were not performed as part of the NEPA process.  The remainder of Paragraph 60 consists of allegations that are denied.

61.    The allegations contained in Paragraph 61 are denied.

62.    The allegations contained in Paragraph 62 are denied.

63.    The first and second sentences of Paragraph 63 consist of allegations which are denied.  The last sentence is a quotation attributed to Defendant Homer from his May 7, 2009 letter to Marty Nohe, Chris Zimmerman, Mark Dudenher, and Michael May, which speaks for itself and provides the best evidence.

64.    The allegations contained in Paragraph 64 are denied.

65.    The first sentence of Paragraph 65 is a characterization by Plaintiff of Arlington County's alleged policy of transit usage and slugging.  Defendants lack sufficient knowledge to admit or deny the information contained in the first sentence of Paragraph 65.  The remainder of Paragraph 65 consists of allegations that are denied.

66.     The first sentence of Paragraph 66 is denied.  The second sentence is admitted to the extent it is limited to I-95 and I-395 in Arlington County, Virginia.  The remainder of Paragraph 66 consists of allegations that are denied.

67.     The allegations contained in Paragraph 67 are denied.

68.     There is insufficient information to admit or deny the information contained in Paragraph 68.

69.     Defendants admit the Northern Section traverses the jurisdictions noted in the first sentence of Paragraph 69, but denies the allegations contained in Paragraph 69.

70.     The first sentence in Paragraph 70 is admitted.  There is insufficient information to admit or deny the remaining information contained in Paragraph 70.

71.     There is insufficient information to admit or deny the information contained in Paragraph 71.

72.     There is insufficient information to admit or deny the information contained in Paragraph 72.

73.     There is insufficient information to admit or deny the information contained in Paragraph 73.

74.     There is insufficient information to admit or deny the information contained in Paragraph 74.

75.     There is insufficient information to admit or deny the information contained in the first sentence of Paragraph 75.  The remainder of Paragraph 75 consists of allegations that are denied.

76.     The allegations contained in Paragraph 76 are denied.

77.     The allegations contained in Paragraph 77 are denied.

78.     There is insufficient information to admit or deny the information contained in Paragraph 78.

79.     The allegations contained in Paragraph 79 are denied.

80.     The first sentence is admitted.  The last sentence is denied in that the purpose of the IJR is to identify potential impacts to the interchanges and local roads if the proposed Project is implemented.

81.     The allegations contained in Paragraph 81 are denied.

82.     The allegations contained in Paragraph 82 are denied.

83.     The allegations contained in the first sentence of Paragraph 83 are denied.  There is insufficient information to either admit or deny the information contained in the remainder of Paragraph 83.

84.     The allegations contained in Paragraph 84 are denied.

85.     The allegations contained in Paragraph 85 are denied.

86.     The allegations contained in the first sentence of Paragraph 86 are denied.  There is insufficient information to either admit or deny the information contained in the remainder of Paragraph 86.

87.     The allegations contained in Paragraph 87 are denied.

88.     The Defendants admit that in response to a request by the Plaintiff to revisit the design of the Shirlington Rotary, VDOT included that scope review in its status update of the Project at the July 16, 2009 presentation to the Commonwealth Transportation Board Workshop. On August 17, 2009, VDOT Chief Engineer Malcolm Kerley wrote to the Chairman of the Northern Virginia Transportation Authority and the Chairman of the Fredericksburg Metropolitan Planning Organization, with copies to the chief elected officials of each local

jurisdiction affected by the Project, to inform them that the Project will not reach commercial close in August as anticipated "…due to local government and community concerns, as well as challenging credit market conditions…" The letter further stated that the Project Team will work collaboratively with the Plaintiff to address the local traffic impact issues between Eads Street and Duke Street. The allegations remaining in Paragraph 88 are denied.

89.     The allegations in Paragraph 89 are denied.

90.     The first sentence of Paragraph 90 is admitted. The remainder of Paragraph 90 is denied. The Air Quality Analysis prepared for the I-95/395 HOV/Bus/HOT Lanes Project did provide the analyses and data needed to comply with NEPA and transportation conformity under the Clean Air Act.  Further, as noted previously, the purpose of the IJR is to identify any need for improvements to the roadway system if the proposed Project is put in place, not to comply with NEPA or transportation conformity requirements.

91.     Paragraph 91 is admitted.

92.     Paragraph 92 is denied to the extent that parking lots and bus stations are included in the Project and to the extent that Plaintiffs indicate that the Air Quality Analysis is the sole basis for FHWA's January 7, 2009 determination that the Northern Section does not significantly impact the environment.   The Air Quality Analysis is only part of the basis and the Documentation for FHWA's January 7, 2009 determination speaks for itself and provides the best evidence.

93.     The Defendants admit that the traffic forecasts of the Air Quality Analysis predict a slight increase in vehicle miles traveled and peak hour traffic volumes and a slight increase in Mobile Source Air Toxics ("MSAT") emissions of 1.6% or less in all cases in the build scenario versus the no-build scenario for each year analyzed. The same Air Quality Analysis indicates

that the quantitative carbon monoxide ("CO") and MSAT analysis show that the future emissions and/or concentrations of these pollutants once the Project is built will be significantly less than they are today. Plaintiff's second sentence of Paragraph 93, which breaks away from referencing the Air Quality Analysis they referenced in the first sentence and simply refers to "strongly correlated indicators", is therefore denied by Defendants. The last two sentences of Paragraph 93 are denied.

94.     There is insufficient information to either admit or deny the information contained in Paragraph 94.

95.     The next to last sentence of Paragraph 95 is admitted but the last sentence is denied.    There is insufficient information to either admit or deny the remaining information contained in Paragraph 95.

96.     Paragraph 96 is admitted.

97.     The allegations contained in Paragraph 97 are denied. The Muirkirk monitor was chosen as part of the qualitative $PM_{2.5}$ hot-spot analyses based on comparison to another location with similar characteristics.

> "The Muirkirk monitor, which is located in Maryland approximately 20 miles from the study area, has the highest AADT [average annual daily traffic] (303,600) and truck percentage (7.9%) of all the monitors listed in Exhibit 15. The AADT and truck percentage near the Lee District Park monitor are lower than those at the Muirkirk monitor, while the AADT near the Aurora Hills monitor is slightly higher than Muirkirk, but with a substantially lower truck volume. The Muirkirk monitor, therefore, was chosen as the representative monitor for the study area. However, as the Lee District and Aurora Hills monitors are closer to the study area, values recorded at these monitors were also considered. *See Page 24, Air Quality Analysis, I-95/395 HOV/Bus/HOT Lanes Project, December 5, 2008.*

98.     The allegations contained in Paragraph 98 are denied. Since the worst case intersections analyzed were found to comply with the National Ambient Air Quality Standards

(NAAQS) for all analysis years, it is reasonably expected that all adjacent and nearby areas would also be in compliance with the NAAQS as well.

99.    The allegations contained in Paragraph 99 are denied.  The Air Quality Analysis was prepared in accordance with EPA and FHWA guidance and procedures which do not require MSAT pollutant concentrations to be predicted at specific locations nor do they require an evaluation of the number of people exposed to the Project's alleged MSAT emissions.

100.    The first sentence of Paragraph 100 is admitted with the clarification that Exhibit 23 of the Air Quality Analysis documents the results of the quantitative MSAT analysis which shows, for each analysis year of 2010, 2015 and 2030, a projected increase in each respective MSAT as a result of the Project of between 0.3% and 1.6% when compared to the respective no-build scenario, which is generally considered to be an insignificant amount.  However, when comparing future projected MSAT emissions levels with those in the base year of 2006, Exhibit 23 also documents that, even with the Project, MSAT emissions will decline significantly in future years.  The allegations in the remainder of Paragraph 100 are denied.

101.    The allegations contained in Paragraph 101 are denied.  The IJR is a draft document and has not been finalized so there are no final determinations.

102.    The first three sentences of Paragraph 102 consist of Plaintiff's characterization of the area which requires no response.  The allegations contained in Paragraph 102 are denied.  The Air Quality Analysis analyzed the top five intersections for worst-case level of service and/or highest traffic volumes and did not show an exceedance of the NAAQS.  The receptors that were chosen for the CO hot-spot analysis, as documented in the Air Quality Analysis Exhibits 6 through 10, are all immediately adjacent to the I-95/395/HOV/Bus/HOT Lanes Project Corridor and were placed in areas where human activity might be expected to coincide

with peak CO concentrations.  Each of the receptors chosen was well within 300 feet of the Project corridor which is the distance that the Plaintiff alleges the Hoffman-Boston Elementary School is from the western edge of I-395. As noted previously in Paragraph 98, since the worst case intersections analyzed were found to comply with the NAAQS for all analysis years, it is reasonably expected that all adjacent and nearby areas would also be in compliance with the NAAQS as well.  The Air Quality Analysis' $PM_{2.5}$ hot-spot analysis found that the Project is not expected to cause or contribute to a violation of either the 24-hour or annual $PM_{2.5}$ NAAQS. This finding is valid in all areas of the Project corridor, which would include the impacts expected at the Hoffman-Boston school.

103.    The allegations contained in Paragraph 103 are denied based on the reasons stated in Paragraph 102 which are incorporated in full herein.

104.    The allegations contained in Paragraph 104 are denied.  As indicated in the Air Quality Analysis, traffic forecasts, including daily and peak period forecasts, were developed by Fluor-Transurban using a project-specific model based on the Metropolitan Washington Council of Government's forecasting model.   Model results were checked and validated by Fluor-Transurban and MWCOG, and were also reviewed by VDOT.

105.    The allegations contained in Paragraph 105 are denied.

106.    The first sentence is admitted.  The allegations contained in Paragraph 106 are denied.  Both the CE and the Air Quality Analysis complied with all applicable federal and state laws and regulations.

107.    The allegations contained in Paragraph 107 are denied.

108.    The allegations contained in Paragraph 108 are denied.  In addition, the Air Quality Analysis for the Project was initiated prior to the finalization of the updated CO

background concentrations that were based on recent CO monitoring data provided by the Virginia Department of Environmental Quality.   But if the updated background CO concentrations had been used, the projected worst-case CO concentrations shown in Exhibits 12 and 13 of the Air Quality Analysis for the Project would have been substantially lower.

109.   There is insufficient information to admit or deny the information contained in Paragraph 109.

110.   The first four sentences are admitted.   The last sentence of Paragraph 110 is denied.

111.   The first sentence of Paragraph 111 consists of Plaintiff's characterization of 40 C.F.R. Part 51, Appendix W, which speaks for itself and provides the best evidence.  In the third sentence, Plaintiff mischaracterizes EPA's guidelines as recommending placement of receptors at property lines of schools, hospitals, rest homes and other areas to which the general public has access" when in reality, the guidelines just give those sites as one grouping of examples of reasonable receptor sites.  The other reasonable examples which Plaintiff failed to mention and which are listed previously to the ones Plaintiff does mention are as follows: all sidewalks to which the general public has access on a more or less continuous basis; a vacant lot near an intersection where the general public would have continuous access in the immediate vicinity; portions of a nearby parking lot to which pedestrians have continuous access; in the vicinity of parking lot entrances and exits, provided a nearby area contains a public sidewalk, residences or structures to which the general public is likely to have continuous access.  Through sentences 5, 6, and 7, Plaintiff implies that 40 C.F.R § 93.123(a)(1)(ii) requires the inclusion of CO hot spot analysis for all intersections with existing Levels-of-Service of D, E, or F or those that will change to D, E, or F because of increased traffic volumes related to the Project when that is

incorrect.  In actuality the citation only focuses on the procedures to be used to determine which projects require a CO hot spot analysis:

> These procedures shall be used in the following cases…: (ii) For projects affecting intersections that are at Level-of-Service D, E, or F, or those that will change to Level-of-Service D, E, or F because of increased traffic volumes related to the project;  40 C.F.R. § 93.123 (a)(1)(ii)

The allegations in Paragraph 111 are denied based on the reasons stated in responses 102 and 103, which are incorporated in full herein.

112.    Plaintiffs incorrectly state that EPA issued an "Advance Notice of **Potential** Rulemaking: Regulating Greenhouse Gas Emissions Under the Clean Air Act" when in fact it issued "Proposed" Rulemaking.   (Emphasis added).  The remainder of Paragraph 112 is Plaintiff's characterization of EPA's proposal and the Metropolitan Washington Council of Governments alleged statements and the proposal and statements speak for themselves and provide the best evidence.

113.    The last sentence of Paragraph 113 is denied but the remainder of the paragraph is admitted with the following clarification.  At the time the Air Quality Analysis and Categorical Exclusion were prepared and approved by FHWA, there were no applicable federal or state regulations pertaining to the evaluation of Greenhouse Gas (GHG) emissions for transportation projects.  Had a GHG emissions analysis been performed, the Defendants believe that the results would show an insignificant increase in GHG emissions, similar to the 1%-2% increase in MSAT emissions that was found when comparing the build scenario to the no-build scenario for each analysis year.  With the adoption of the new corporate average fuel economy ("CAFÉ") standards that are expected to go into effect nationally by 2016, it is reasonable to expect that the total GHG emissions from the Project corridor will be significantly lower in 2030 than they are today.

114.    The first sentence of Paragraph 114 is admitted with the clarification that, as of the date that the Air Quality Analysis was prepared and approved by FHWA, there were no federal or state requirements to include an analysis of GHGs in the Project's Air Quality Analysis.  There is insufficient information to admit or deny the remaining information contained in Paragraph 114.

### Count I

115.    Defendants incorporate by reference their answers to Paragraphs 1 through 114 as set forth above.

116.    Paragraph 116 consists of Plaintiff's conclusions of law and characterizations of law and regulation, which speak for themselves and provide the best evidence of their content. To the extent a response is required, the allegations are denied.

117.    Paragraph 117 consists of Plaintiff's conclusions of law to which no response is required.  To the extent a response is required, the allegations are denied.

118.    Paragraph 118 consists of Plaintiff's characterizations of regulations which speak for themselves and provide the best evidence of their content.  Plaintiffs incorrectly refer to the "scope" of impacts for determining whether an Environmental Assessment or an Environmental Impact Statement is warranted when in fact, NEPA's focus for determining what environmental review process is most appropriate, i.e. a categorical exclusion, an environmental assessment, an environmental impact statement, is on the level of *significance* of environmental impacts.  See 23 C.F.R. § 771.115.  (Emphasis added).

119.    Paragraph 119 is denied.  A Categorical Exclusion does not exclude a project from the NEPA environmental review process, as clearly stated in 23 C.F.R. 771.117(d).  The Project was approved as a Categorical Exclusion in August 2006, which meant that additional

documentation and analyses had to be submitted to demonstrate and verify the initial presumption that the Project would not have a significant impact on the environment.   That documentation was submitted formally in December, 2008 and the Categorical Exclusion was approved in January 2009.

120.   The allegations in Paragraph 120 are denied.

121.   The allegations in Paragraph 121 are denied.

122.   Paragraph 122 of the Complaint consists, in part, of legal conclusions to which no response is required.  All other allegations contained in Paragraph 122 are denied.

123.   Paragraph 123 consists of Plaintiff's conclusions of law and prayer for relief and no response is required.  Defendants deny that Plaintiff is entitled to such relief.

**Count II**

124.   Defendants incorporate by reference their answers to Paragraphs 1 through 123 as set forth above.

125.   Paragraph 125 consists of Plaintiff's conclusions of law and characterizations of law and regulation, which speak for themselves and provide the best evidence of their content. To the extent a response is required, the allegations are denied.

126.   Paragraph 126 consists of Plaintiff's characterization of a regulation which speaks for itself and requires no response.

127.   Paragraph 127 consists of Plaintiff's characterization of a regulation which speaks for itself and requires no response.

128.   Paragraph 128 consists of Plaintiff's characterization of a regulation which speaks for itself and requires no response.

129.    Paragraph 129 is a mischaracterization of a regulation by Plaintiffs and is therefore denied.  Any allegation contained in Paragraph 129 is denied.

130.    The allegations in Paragraph 130 are denied.

131.    The allegations in Paragraph 131 are denied.

132.    The allegations in Paragraph 132 are denied.

133.    The allegations in Paragraph 133 are denied.

134.    The allegations and conclusions of law in Paragraph 134 are denied.

135.    Paragraph 135 consists of Plaintiff's conclusions of law and prayer for relief and no response is required.  Defendants deny that Plaintiff is entitled to such relief.

## Count III

136.    Defendants incorporate by reference their answers to Paragraphs 1 through 135 as set forth above.

137.    Paragraph 137 consists of Plaintiff's conclusions of law which require no response.

138.    Paragraph 138 consists of Plaintiff's characterization of regulations which speak for themselves and provide the best evidence.  To the extent any response is required, any allegations are denied.

139.    The allegations in Paragraph 139 are denied.

140.    The allegations in Paragraph 140 are denied.

141.    The allegations in Paragraph 141 are denied.

142.    Paragraph 142 consists of Plaintiff's conclusions of law and prayer for relief and no response is required.  Defendants deny that Plaintiff is entitled to such relief.

## Count IV

143.    Defendants incorporate by reference their answers to Paragraphs 1 through 142 as set forth above.

144.    Paragraph 144 consists of Plaintiff's conclusions of law which requires no response.

145.    Paragraph 145 consists of Plaintiff's conclusions of law which requires no response.

146.    The allegations in Paragraph 146 are denied.

147.    Paragraph 147 consists of Plaintiff's conclusions of law which requires no response.

148.    Paragraph 148 consists of Plaintiff's conclusions of law which requires no response.

149.    The allegations in Paragraph 149 are denied.

150.    The allegations in Paragraph 150 are denied.

151.    The allegations in Paragraph 151 are denied.

152.    The allegations in Paragraph 152 are denied.

## Count V

153.    Defendants incorporate by reference their answers to Paragraphs 1 through 152 as set forth above.

154.    Paragraph 154 consists of Plaintiff's conclusions of law which requires no response.

155.    Paragraph 155 consists of Plaintiff's conclusions of law which requires no response.

156.   Paragraph 156 consists of Plaintiff's conclusions of law which requires no response.

157.   The allegations in Paragraph 157 are denied.

158.   The allegations in Paragraph 158 are denied.

159.   The allegations in Paragraph 159 are denied.

160.   The allegations in Paragraph 160 are denied.

161.   The allegations in Paragraph 161 are denied.

162.   The allegations in Paragraph 162 are denied.

**Count VI**

163.   Defendants incorporate by reference their answers to Paragraphs 1 through 162 as set forth above.

164.   Paragraph 164 consists of Plaintiff's conclusions of law which requires no response.

165.   The allegations in Paragraph 165 are denied.

166.   The allegations in Paragraph 166 are denied.

167.   The allegations in Paragraph 167 are denied.

168.   The allegations and conclusions of law in Paragraph 168 are denied.

169.   The allegations and conclusions of law in Paragraph 169 are denied.

170.   The allegations and conclusions of law in Paragraph 170 are denied.

**Count VII**

171.   Defendants incorporate by reference their answers to Paragraphs 1 through 170 as set forth above.

172.     Paragraph 172 consists of Plaintiff's conclusions of law which requires no response.

173.     Paragraph 173 consists of Plaintiff's conclusions of law which requires no response.

174.     Paragraph 174 consists of Plaintiff's conclusions of law which requires no response.

175.     The allegations in Paragraph 175 are denied.

176.     The allegations and conclusions of law in Paragraph 176 are denied.

177.     The allegations and conclusions of law in Paragraph 177 are denied.

178.     The allegations and conclusions of law in Paragraph 178 are denied.

179.     The allegations and conclusions of law in Paragraph 179 are denied.

180.     The allegations and conclusions of law in Paragraph 180 are denied.

181.     The allegations and conclusions of law in Paragraph 181 are denied.

182.     The allegations and conclusions of law in Paragraph 182 are denied.

183.     The allegations and conclusions of law in Paragraph 183 are denied.

## RELIEF REQUESTED

The balance of the complaint contains Plaintiff's prayer for relief and not allegations of fact to which no answer is required.  To the extent Defendants must respond, they deny that Plaintiff is entitled to the requested relief or to any relief whatsoever.  Based upon the answers to the Complaint as set forth in paragraphs 1-183, the Defendants deny that the Plaintiff is entitled to any of the relief requested.  They request that the Plaintiff's Complaint be dismissed with prejudice, and that the Defendants be awarded such other relief as may be appropriate.

## GENERAL DENIAL

Defendants deny any allegations of the Complaint, whether express or implied, that are not specifically admitted, denied or qualified herein.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.  The Defendants deny that the present action is cognizable under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.

2.  The Defendants deny that the Plaintiff has been denied any rights protected by the United States Constitution, the Virginia Constitution or any portion of the United States Code.

3.  The Complaint fails to state a claim upon which relief can be granted.

4.  The Defendants deny that the Plaintiff has suffered any cognizable injuries or damages as a result of any act or acts on the part of these Defendants.

5.  The Defendants allege and aver that to the extent that the Plaintiff has suffered any injuries or damages, such injuries or damages were due to an act or acts by the Plaintiff, or on the part of others not under control of the Defendants, and for whose conduct they are in no wise responsible, and call for strict proof thereof.

6.  The Defendants are immune from suit based on the discharge of their official duties.

7.  Defendants are entitled to good faith immunity.


Respectfully submitted,


**PIERCE HOMER, SECRETARY OF
TRANSPORTATION, COMMONWEALTH OF**

**VIRGINIA AND THE VIRGINIA
DEPARTMENT OF TRANSPORTATION,**


By:  _____/s/_____
 Suzanne T. Ellison
 Virginia Bar Number: 24865
 Office of the Attorney General
 900 East Main Street
 Richmond, Virginia  23219
 Telephone: (804) 786-7774
 Fax: (804) 786-9136
 E-mail: sellison@oag.state.va.us

 *Counsel for the State Defendants*

## CERTIFICATE OF SERVICE

In addition, I hereby certify that, on this 26th day of February 2010, I will electronically file

the foregoing with the clerk of the court using the CM/ECF system to:

John Burke Britton (#426434)
Schnader, Harrison, Segal &
Lewis, LLP
750 9th Street NW, Suite 550
Washington, DC 20001
Tel: (202) 419-4218
Fax: (202) 419-4258
Email: jbritton@schnader.com

Neil Thomas Proto
Schnader, Harrison, Segal &
Lewis, LLP
750 9th Street NW, Suite 550
Washington, DC 20001
Tel: (202) 419-4214
Email: nproto@schnader.com

Stephen A. MacIsaac
Arlington County Attorney
2100 Clarendon Boulevard
Suite 403
Arlington, Virginia 22201
Tel: (703) 228-3100
Email: smacisaac@arlingtonva.us

*Counsel for Plaintiff*

Beverly F. Li
U.S. Department of Justice
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 353-9213
Fax: (202) 514-8865
Email: Beverly.li@usdoj.gov

Julie S. Thrower
U.S. Department of Justice

601 D Street, NW
Room 3135
Washington, DC 20004
Tel: (202) 305-0247
Email: julie.thrower@usdoj.gov

*Counsel for the federal defendants*

**PIERCE HOMER, SECRETARY OF
TRANSPORTATION, COMMONWEALTH OF
VIRGINIA AND THE VIRGINIA
DEPARTMENT OF TRANSPORTATION**

By:      _____/s/_____
Suzanne T. Ellison
Virginia Bar Number: 24865
Office of the Attorney General
900 East Main Street
Richmond, Virginia  23219
Telephone: (804) 786-7774
Fax: (804) 786-9136
Email: sellison@oag.state.va.us

*Counsel for the state defendants*