# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNTY BOARD OF ARLINGTON, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:09-cv-01570-RMC |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF TRANSPORTATION; RAYMOND H. LAHOOD, in his official capacity and individual capacity, Secretary of the U.S. Department of Transportation; FEDERAL HIGHWAY ADMINISTRATION; VICTOR MENDEZ, in his official and individual capacity, Federal Highway Administrator; VIRGINIA DEPARTMENT OF TRANSPORTATION; PIERCE R. HOMER, in his individual capacity, and SEAN T. CONNAUGHTON, in his official capacity as Virginia Secretary of Transportation, | ) **PARTIES' STATEMENT** ) **OF THE CASE** ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Pursuant to the Court's April 20, 2010 Order for Initial Scheduling Conference (Dkt. No. 28), the parties Plaintiff County Board of Arlington; Federal Defendants U.S. Department of Transportation, Raymond H. LaHood, in his official capacity as Secretary of the U.S. Department of Transportation and in his individual capacity, as to certain claims, and Victor Mendez, in his official capacity as Administrator of the Federal Highway Administration and in his individual capacity, as to certain claims; and State Defendants Virginia Department of Transportation, Pierce R. Homer, in his individual capacity, and Sean T. Connaughton, in his official capacity as Virginia Secretary of Transportation (collectively, "Defendants") respectfully submit their respective statements of the case.

# PLAINTIFF'S STATEMENT OF THE CASE

## Description of Project

In October 2006, pursuant to the Virginia Public-Private Transportation Act of 1995 (as amended), the Virginia Department of Transportation ("VDOT") entered into a partnership with private vendors -- Fluor Virginia, Inc. ("Fluor") and Transurban (USA) Development, Inc. ("Transurban") (collectively "Fluor-Transurban") -- sanctioned and recognized by the Federal Highway Administration ("FHWA"), for the funding, construction and operation of a new transportation facility.  This delegation of public infrastructure to a private vendor is a dramatic departure from the traditional FHWA-State Highway Department agreement model.  The new facility involves the introduction of toll lanes and major infrastructure modifications and additions, including but not limited to:  exit/entrance ramps; interchanges; parking lots; bus facilities; fly-overs; and additional travel lanes along the entire length of the Interstate 395 ("I-395")/Interstate 95 ("I-95") corridor in Northern Virginia from Spotsylvania County to the jurisdictionally complex, security-laden Eads Street/Pentagon Reservation interchange in Arlington County, Virginia (the "Project").  The public-private partnership agreement would cede control of the Commonwealth of Virginia's public infrastructure to Fluor-Transurban for eighty (80) years.

## Circumvention of Environmental, Public Health, Social/Disparate Impact Analysis

Acting in concert with and for the interests of Fluor-Transurban, VDOT, FHWA and the individual Defendants (collectively "Defendants"), deliberately and without reasoned justification, narrowly defined the Project unrelated to the reality of its geographic and environmental scope.  The Defendants then determined that this narrowly defined Project could be segmented into a "Northern Section" and a "Southern Section."  The seemingly arbitrary

segmentation of the Project permitted Defendants to deem the "Northern Section" a Categorical Exclusion ("CE"), thereby evading the comprehensive review and public scrutiny requirements of the National Environmental Protection Act ("NEPA").  42 U.S.C. §§ 4321, *et seq*.  In doing so, Defendants ensured that the full environmental and public health effects along with the potential degradation of the existing high-occupancy vehicles ("HOV") and transit system in the corridor and the disparate impact of the Northern Section on minority and low-income communities, particularly in Arlington County, would not be adequately analyzed, or analyzed at all, and disclosed to the public, as required by law.  This would unduly facilitate the arrangement with Fluor-Transurban and preclude necessary mitigation for the Project.

In particular, Defendants failed to evaluate at all the potentially significant adverse environmental and public health effects on minority communities as a result of the traffic congestion and ensuing air pollution caused by the Northern Section, specifically on the historically minority communities in Arlington and on vulnerable populations in these and other communities adjacent to, and nearby, the Project.

**Deficiencies and/or Absence of Essential Environmental, Public Health and Social Impact Analyses**

By deliberately invoking deficient, inaccurate and inadequate traffic analyses and environmental reviews to support the CE determination, Defendants:

(i) failed to fully and properly analyze the air quality impacts, and therefore, public health consequences of the Northern Section on the adjacent and nearby communities, particularly in historically minority communities in Arlington County;

(ii) did not analyze at all the environmental, public health and societal impacts on low-income and minority communities, particularly in Arlington County, and on vulnerable populations in locations such as schools, day care facilities and elderly homes, including those

owned, operated, financed or supported by Arlington County, adjacent to and nearby the Northern Section;

(iii) failed to provide any analysis of the probable disruptive impacts of the Northern Section on the operation of the existing, highly efficient and environmentally beneficial HOV lanes system and related commuter behavior throughout the entire I-395/I-95 corridor, relied on and used by Arlington County residents and employees and fully supported by Arlington County through its laws and policies; and

(iv) ignored the physical impacts on the general purpose lanes of the existing highway and on the local street networks, owned and operated by Arlington County and under the legal authority of the County Board, putting at risk traditional and historic neighborhoods and communities, including Fairlington, Shirlington and Parkfairfax.

**Knowing Disregard of Potential Disparate Impact on Minority Communities**

In support of its desire for the HOT lanes, Defendants deliberately and knowingly ignored their obligations under Title VI of the Civil Rights Act, the FAHA, FHWA's Orders and national precedents in other communities governing its duty in matters of race and poverty, and of the 5th and 14th Amendments to the United States Constitution and Article 1, § 11 of the Virginia Constitution. Defendants failed to identify and consider the dramatic alteration of the I-395/I-95 corridor, a regional transportation facility through five Northern Virginia counties and the City of Alexandria, which encompasses approximately forty (40) census tracts that are predominately minority or minority/below the poverty income level, and the Northern Section's disproportionately high and adverse health and environmental impacts on minority and low-income populations. In contrast to these adverse impacts, the Project is intended to benefit

suburban and rural, primarily Caucasian, residents of Stafford and Spotsylvania Counties operating single-occupancy vehicles.

**Violation of Obligations Under NEPA and CAA**

Defendants also violated their environmental review and public disclosure obligations under NEPA and the Clean Air Act.  42 U.S.C. §§ 7401, *et seq*.  In this situation, without comprehensive environmental analyses, Defendants are prohibited from approving and going forward with the Northern Section.  Any transportation project that is likely to impact the environment requires a thorough evaluation of those impacts ― either through an "Environmental Impact Statement" ("EIS"), detailing those impacts, or through an "Environmental Assessment" ("EA") detailing why the project will not have a significant impact on the environment.  The purpose is to ensure that all environmental and public health impacts will be considered, both by the agency itself and by the public, during deliberations on whether to approve a project.  Only a small class of projects is considered by law to be so clearly unlikely to impact the environment that an EA may not be required and a CE is designated.  Here, Defendants wrongfully classified the Northern Section as a CE, as the Northern Section does not fall into the narrow class of CE projects.  Defendants also failed to demonstrate conformity for the Northern Section under, and therefore meet the mandatory requirements of, the Clean Air Act in ensuring compliance with NEPA and FHWA regulations.  Furthermore, Defendants failed to adequately calculate pollutant emissions as a result of the Northern Section to determine whether local and regional air quality standards were satisfied and to ensure that the Northern Section would not cause or contribute to any new localized pollution violations.

**Defendants' Evasion of Public Scrutiny**

Defendants eschewed a well-reasoned environmental, public health and social impact analysis of the Northern Section because their goal was to avoid public scrutiny. Such scrutiny would have revealed that the Northern Section is designed in a manner that not only harms the environment and creates adverse public health impacts, but also causes disproportionate harm to historically minority communities, particularly those in Arlington County. Based on Defendants' identification of the Project and inappropriate and artificially constrained traffic data and environmental analyses for the Northern Section, including the absence of any analysis of the physical and health impacts on historically minority and low-income communities, particularly in Arlington County, it is not possible, logical or reasonable to claim, as the Defendants have done, that the Northern Section will not significantly impact the human environment or that the Project can be fully, legally and practically understood and analyzed without examining it in its entirety.

**PLAINTIFF'S STATUTORY BASES**

Arlington County seeks declaratory and injunctive relief against Defendants based on Defendants' violations of federal and state civil and constitutional rights, and on Defendants' arbitrary and capricious failure to comply with environmental obligations in approving the Northern Section of the Project. Defendants' actions directly and unlawfully adversely impact Arlington County and its residents. This action arises under and alleges violations of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; 42 U.S.C. § 1983; the 5th and 14th Amendments to the United States Constitution; Article 1 § 11 of the Commonwealth of Virginia Constitution; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*; the Air Pollution Prevention and Control Act ("Clean Air Act"), 42 U.S.C. §§ 7401, *et seq.*; the Federal-Aid

Highway Act ("FAHA"), 23 U.S.C. § 109; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

## DEFENDANTS' STATEMENT OF THE CASE

Plaintiff has brought this lawsuit seeking declaratory and injunctive relief alleging that Defendants have failed to comply with environmental obligations for a highway project along the I-95/I-395 corridor in northern Virginia (hereinafter referred to as "Proposed Project"). The Proposed Project is commonly referred to as the "High Occupancy Toll Lane" or "HOT Lane" project. Key elements of the Proposed Project in the I-95/I-395 corridor include: (1) re-striping the existing two-lane High Occupancy Vehicle ("HOV") facility in a portion of the corridor to create three HOV/HOT lanes; (2) construction of two additional HOV/HOT lanes in the existing median and extending a single HOV/HOT lane in other portions of the corridor; (3) associated construction or modification of HOV/HOT lane entry/exit points; and (4) construction of related facilities, such as a bus-to-rail transfer station and pedestrian bridge. No new permanent rights of way are needed for the Proposed Project because it is being constructed within the existing roadway facility.

An agency is allowed to develop categorical exclusions ("CE"), which are "categor[ies] of actions which do not individually or cumulatively have a significant effect on the human environment . . . and for which, therefore, neither an environmental assessment or environmental impact statement is required." 40 C.F.R. § 1508.4. Under Federal Highway Administration regulations that set forth the agency's CEs, 23 C.F.R. § 771.117(d), and based on the environmental analysis and documentation the State Defendants submitted to Federal Defendants, Federal Defendants determined that the Proposed Project would not have a significant effect on the environment. Therefore neither an environmental assessment nor

environmental impact statement was required. The environmental analysis submitted by State Defendants included extensive studies on the Proposed Project's impacts to air quality, noise, and archeological sites. Before the CE was approved, public input, including that from the Plaintiff, was sought. Five public informational meetings were held in July 2007. Comments from these public outreach meetings did not raise any new issues that had not been or were not being addressed. After review of the public comments and the submitted documentation, on January 7, 2009, Federal Defendants approved the CE for the Proposed Project.

Plaintiff alleges that Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq*., the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, *et seq*., and the Federal Aid Highway Act ("FAHA"), 23 U.S.C. § 109, by failing to adequately examine the environmental impacts of the Proposed Project and by improperly segmenting the Proposed Project. Plaintiff also brings claims under Title VI of the Civil Rights Act of 1964, the 5th and 14th Amendments of the U. S. Constitution and the Constitution of the Commonwealth of Virginia, contending that those same alleged failures to examine the environmental impacts of the Proposed Project result in a discriminatory impact on minority and low-income populations. Notwithstanding Plaintiff's allegations concerning purported violations of the Civil Rights Act and the state and federal constitutions, this case is, first and foremost, an appeal under the Administrative Procedure Act. Review of the agency's administrative record will demonstrate that Defendants complied with all relevant requirements of NEPA, FAHA and CAA. Once Plaintiff's NEPA, FAHA and CAA allegations are resolved in favor of the Defendants, Defendants believe that there will be no basis for Plaintiff's Civil Rights Act or constitutional claims premised on the alleged violations of NEPA, FAHA and CAA. Defendants thus have proposed to the Court that the claims be bifurcated into APA and non-APA claims, as discussed

in Paragraph (11) of the parties Rule 16.3 Meet and Confer Report filed on May 12, 2010 (Dkt. No. 29).

In addition, Defendants assert the following defenses to Plaintiff's claims: (1) Plaintiff has failed to state a claim upon which relief can be granted for some or all of its claims; (2) Plaintiff has failed to exhaust administrative remedies for some or all of its claims; and (3) Defendants are immune from suit with respect to some of Plaintiff's claims.

Respectfully submitted on this 19th day of May 2010,

| | |
|---|---|
| FOR PLAINTIFF: | COUNTY BOARD OF ARLINGTON<br>By Counsel |
| | STEPHEN A. MACISAAC (#362530)<br>County Attorney<br>County Board of Arlington<br>Suite 403<br>2100 Clarendon Blvd.<br>Arlington, VA 22201<br>Telephone : (703) 228-3100<br>Telefax : (703) 228-7106<br>Email : smacisaac@arlingtonva.us |
| | SCHNADER HARRISON SEGAL & LEWIS LLP |
| | By: /s/ John B. Britton *by /s/ Julie S. Thrower pursuant to email authorization on May 19, 2010.*<br>JOHN BURKE BRITTON (#426434)<br>NEIL THOMAS PROTO (#167197)<br>750 9th Street NW, Suite 550<br>Washington, DC 20001<br>Telephone: (202) 419-4218<br>Telefax: (202) 419-4258<br>Email: jbritton@schnader.com |
| FOR FEDERAL DEFENDANTS: | IGNACIA S. MORENO<br>Assistant Attorney General<br>Environment & Natural Resources Division |
| | /s/ *Julia Thrower*<br>By: JULIE S. THROWER<br>BEVERLY F. LI |

9

        Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 353-9213 (Li)
Telephone: (202) 305-0247 (Thrower)
Telefax: (202) 305-0506
Email: beverly.li@usdoj.gov
Email: julie.thrower@usdoj.gov

ANGELINE PURDY
Trial Attorney
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, DC 20026-3986
Telephone: (202) 514-0996
Telefax: (202) 514-8865
Email: angeline.purdy@usdoj.gov

*Of counsel*:

Sharon Vaughn-Fair
Assistant Chief Counsel
Vanessa Powell
Federal Highway Administration
Office of the Chief Counsel
10 South Howard Street, Suite 4000
Baltimore, MD 21201

FOR STATE DEFENDANTS:   OFFICE OF THE ATTORNEY GENERAL

By:   <u>/s/ Suzanne T. Ellison *by /s/ Julie S. Thrower pursuant to email authorization on May 19, 2010.*</u>
SUZANNE T. ELLISON
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
Telephone: (804) 786-7774
Telefax: (804) 786-9136
Email: sellison@oag.state.va.us